990 Stamford versus United States 990 Stamford versus United States. Mr. Seidel whenever you're ready. Please report. I'm Michael Seidel. I represent the appellant in this case, Susan Stanford. Susan Stanford is the wife of Robert Allen Stanford. She was married to him in 1975. They were married at the time that the United States Securities and Exchange Commission petitioned the United States District Court for the Northern District of Texas to appoint a receiver over all of the property of Robert Allen Stanford. Under Texas law, Mrs. Stanford owned an undivided one half interest in all of that property. I think we understand the background of what happened. Let me be clear. It seems to me that you've made allegations in your complaint and they're different from what you're arguing here in your brief. So can you go through whether, is she challenging whether the U.S. had the right to appoint a receiver and seize the assets in question? I don't think that's open for question, Your Honor. So the U.S. did have the right to do that? Did have the right to do that. Okay, so what is she alleging exactly with respect to the assets? That the property was taken by the United States by the appointment of the receiver and by the receivers. Well, that's a fact. If you agree that that's true as a matter of fact, you all agree that it was taken. So you are alleging, I thought you just said to me that she's not challenging that the U.S. had the right to take it. So what are you alleging in the complaint? We're alleging that the U.S. under the Horne case doesn't have the right to take it without compensation. In other words, the U.S. So that means you're alleging that the assets that were in the possession of the receiver included marital assets. By definition, yes, Your Honor. But the receiver determined that all of those assets were tainted by the fraud and she conceded that. Well, she did not concede that anywhere nor did the receiver make that. Didn't she agree not to challenge that ruling? No, Your Honor, she did not. She simply settled the case and the terms of the release expressly provide that neither party is conceding that the other party is correct. But she lacked the resources, as the appendix clearly shows, to pursue her claims against the receiver. But she agreed not to contest the receiver's determination. No, Your Honor, that's nowhere contained in the release. All right, well, let's take a look at the release. Where is the release? I thought it was in there. May I get my page, Your Honor? Yes, please. I believe it's found at the appendix 370 and 371. All right. Yeah. Sorry, what page would you repeat that? 370 and appendix 370 and 371. Thank you. So is your argument that this release isn't applicable because it didn't name the U.S. or she released the receiver, the committee, and everybody else but not the U.S.? That's correct, Your Honor. It named only the receiver and the committee. Well, wasn't the receiver acting as an agent of the U.S.?  The receiver was acting under the orders of the district court, but that doesn't make it any less a taking. Well, I mean, that's kind of circuitous. I mean, that's your argument, but that's not giving us any explanation as to why that's necessarily the case. Sure. As the court recognized in Alistarte, a party would be entitled to challenge the actions of a court-appointed receiver and say that the actions of the court-appointed receiver were incorrect, and releasing the court-appointed receiver from such claims does not release a takings claim against the United States. And what about the – I mean, there are two arguable kind of waiver things here. The other is in the divorce decree. She says each party agrees that any remaining community property of the party that is not under the control of the U.S. receivers is hereby divided. So she acknowledged that that property was under control of the U.S. receivers, right? She didn't make that acknowledgment. So I guess what is – so your view is notwithstanding all of that, she still has a takings claim against the United States? Yes, Your Honor. She only released the receiver from claims against the receiver, not against the United States. Texas law, which controls the construction of the release, is clear on that point. Unless the party is named in the release, the party is not released. With regard to the divorce, there's – And I guess what the Court of Federal Claims concluded here, I think, is that she didn't have jurisdiction over the takings claim because it would require the Court of Federal Claims to review the district court's decision. Do you dispute that, that there would be a review of the issues that were already adjudicated in the district court in Texas? Yes, Your Honor, we do. That it wouldn't? No, it would not be required for the Court of Claims to review the decisions of the district court because the district court has done what it has done, that is, affected a taking of the property. So the only thing that the court – I'm sorry, I didn't hear what you said, because the district court has effectuated a taking of the property? Yes, Your Honor, through the receiver at the request of the SEC. And that's the situation that this court faced in Boise Cascade. The agency decided to act through a court order rather than through executive action. And this court specifically held that just because the agency chooses to act through a court order, it is not insulated from a takings claim. So your view of this release that was signed, her settlement agreement in the Northern District of Texas litigation, where she agrees not to bring claims, that was limited to claims against who? You're saying that didn't apply to the U.S.? That's correct. It applied to the receiver himself and to the official creditor's committee. And it's expressly limited to those two parties. And because it's expressly so limited under Texas law, which controls its construction, and the cases that we've cited in our brief, the United States is not released. Now, with regard to the divorce decree, under the Texas Family Code, the Texas Divorce Court retains jurisdiction to divide previously undivided property. So if the receiver insisted that property under his control not be divided by the divorce court at that time, that doesn't mean it wasn't community property because the Family Code expressly recognizes that there may be community property that is not divided in a final decree, and the parties are free to come back and ask the court to make a just and right division of that in the future. The problem here is that this property can never be returned. It was physically appropriated by the express terms of the order appointing the receiver. It has been sold, and the proceeds of the sale have been discredited, and nobody disputes that. So the only remedy, you've got 25 years' worth of accumulated property that occurred before the United States, even the United States thinks that any fraud occurred. The indictment of Robert Allen Stanford only goes back to activities post-1999, and that's also in the appendix. So what happened to 25 years of community property that accumulated before the United States says Robert Allen Stanford committed fraud? And weren't those arguments that could have or should have been made before the Northern District of Texas? Could those arguments have been made? Well, wasn't that the appropriate venue to make those arguments and to have them adjudicated? No, Your Honor, because... if the receivership had... if there was no right for the U.S. to go after that property in connection with the fraud allegations, I thought that was already kind of cooked. No, in fact, it would have been cooked if the United States had chosen to proceed by a forfeiture proceeding. But by asking and receiving an order that appointed a receiver over all of the assets, which was within the power of the SEC under the Securities and Exchange Act, as construed by the Second Circuit, the Ninth Circuit, the Fifth Circuit, they took all of the property, even untainted property, and they now have disposed of it. Now, where the taint comes in is we concede that she has no property interest in property that was tainted by fraud. But nobody has ever decided that all of this property has been tainted by fraud. And in point of fact, when the United States in the criminal case did seek forfeiture of certain identified property, the jury found that there were significant parts of that property that the United States sought to forfeit that were untainted by fraud. Several bank accounts and funds in other bank accounts were found by the jury not to be tainted by fraud. So it is beyond dispute that some property that was taken by the receiver at the request of the SEC is untainted. And it's that untainted property... I don't understand. That happened in the Northern District of Texas. That was adjudicated. The jury found that some of the property wasn't tainted by fraud. And what happened after that? Actually, that was in the Southern District of Texas. The criminal trial occurred in the Southern District of Texas. I'm sorry. Okay. This was the criminal trial where they reached a point. And the United States chose to proceed only against a certain property and not all of that property was found by the jury to have been tainted by fraud. So plainly, there is property that has been taken by the receiver. So what was adjudicated at the Northern District of Texas? The only thing that was adjudicated at the Northern District of Texas was whether the Securities and Exchange Act authorized the appointment of a receiver to take control, possession and control, over all of the assets. And the district court in the Northern District said, yes, it does. That's what the Securities and Exchange Act authorizes. And the court did that. That's the essence of a takings claim. And you want the Court of Federal Claims to now re-adjudicate that issue? Well, under the takings claim, you want to say that notwithstanding the determination of the Northern District of Texas, it was a non-lawful taking or taken by the U.S.? Well, it doesn't have to be. The U.S. only takes if it has the power to take. There is a take. Well, the takings claim is that you're entitled to compensation for a taking. Yes. Not that it can't take. It's that you have to be compensated for that taking, right? Under the Fifth Amendment and the Horn case, any time the United States government takes private property, it owes compensation. And the Supreme Court says it cannot escape paying compensation. So the only question is whether she had property interest. She would not have a property interest in untainted property, but neither the SEC nor the district court, when the receiver was appointed, excluded untainted property. They took all property, tainted and untainted. And it cannot be doubted that some of that property was untainted because a jury in the criminal case subsequently found that certain items were untainted, and there may be other items that were untainted. So did the U.S. have the power to take it? Yes, just as it may take real estate under eminent domain. But it does not have the power to take the property and then refuse to compensate for it. Okay. Why don't we save the rebuttal time and hear from government. Thank you. Yes, Your Honor. I have one quick question before you sit down. Just in the complaint, paragraph 8 says, on July 18, 2014, the United States Court of Appeals for the Federal Circuit held that the debt instruments in question were not securities. What document does this refer to? Or what ruling does this refer to? If it says the Federal Circuit, Your Honor, it's a typo. I believe it was the D.C. Circuit and SEC versus SIPC that held that the certificates of deposit were not securities, and that's a published decision. Hopefully the citation is correct. There's no citation. In the complaint? In the complaint. It just says, on July 18, 2014, the Federal Circuit held. It should be cited. It's correctly cited in the brief, Your Honor. And what was the case? Securities Exchange Commission versus the SIPC. And the issue was whether the SIPC was going to have to pay some insurance proceeds as part of the SEC action, and the Court of Appeals for the District of Columbia held that the certificates of deposit were not securities. And since they were not securities, the insurance was not. Wait, that wasn't your case, right? You're citing that as legal authority, not as something that happened in your case. That's correct. Okay, well, that's what I was going to ask. Okay. All right. Thank you. Good morning. Good morning. May it please the Court. This Court should affirm the trial court's dismissal of Ms. Stanford's complaint for two reasons. First, her complaint impermissibly would require the trial court to review and effectively reverse the decisions of the district court first, finding contrary to what she has alleged to the complaint, that there was authority for the receivership, and alternatively approving and authorizing the terms of her agreement with the receiver, dismissing and settling any claims she had to property acquired by the receiver. Moreover, even assuming that the court had jurisdiction, given her court-approved settlement, this Court should affirm the dismissal of her complaint, because the trial court correctly held that she had no remaining cognizable interest in the receivership estate, and therefore could not obtain relief upon her takings claim. Is my understanding correct that the receiver determined that all of the assets in receivership were tainted and subject to the fraud? Yes. There was a determination in the underlying civil enforcement action, and this was a new issue that was raised on appeal for the first time, so it's not part of the record, but it's document number 1699 in the underlying civil enforcement case, which is 309CV298. And at pages 89 to 90 of that decision, there was a hearing held at which Mr. Stanford was represented by counsel, and he had asked for a Lewis-style hearing, right, a hearing pursuant to which he could obtain untainted assets for criminal counsel of choice. He wanted $20 million in untainted assets. And the court held a hearing at which he was represented. There were witnesses and exhibits, and at the conclusion of that hearing, the court held that there was not even a nickel in the receivership estate that was not tainted by the fraud. There were no funds not tainted. So for there to be an asset or personal property of Ms. Stanford that was taken, that determination would have to be reviewed. Certainly. That would be an additional. If you were, it's our position that that's a new argument on appeal, that the court should not entertain. But if the court does entertain it, her complaint would necessarily fail for the same reasons, namely that the trial court would have to determine her property interest in what she claims is in the receivership estate, which would require also review and scrutiny and effectively reversing the district court's decision finding that the assets therein were tainted. And obviously it's hornbook law that you're not entitled to the proceeds of crime. The settlement agreement that she, and the release that she entered into is at page 318 and 319 of the appendix. Is that correct? There was a reference earlier in the argument to pages 370 and 371. Oh, my copy says 373 on the left side. There are two numbers. Maybe yours don't have the numbers on the left-hand side. Do they not? Oh, I see. There are numbers on both left and right. Yes. So I was citing to the APPS, citing under the court's new rules. The A number refers to the number in the appendix below. Gosh, we should have redacted that to avoid confusion. It would have been helpful. Okay. If I could just address for a moment Your Honor's question regarding the CFIC case, the case in the D.C. Circuit. The site to that case is 758 F3D 357. And that case did not make a determination that the debt instruments that were sold as part of the Ponzi scheme were not securities. The court did not opine there as to whether or not those instruments were securities. There the issue was whether or not the receiver could force the liquidation of what was called the Stanford Group Company that issued these certificates under the Securities Investment Protection Act. And the court held reluctantly no, it couldn't, because the investors were not customers of the SGC entity. Instead, they purchased their securities from a different entity, a related company, Stanford International Bank Limited. However, the issue of whether the securities at issue here, the debt instruments at issue here were securities was resolved by the court below. You can find that ruling at 267 of the appendix. And also the Supreme Court has opined that, in fact, they were securities. There was a case that was brought, Chadbourne and Park v. Trois, in which certain investors sued various entities that they alleged made misrepresentations that caused them to invest in this Ponzi scheme. And the Supreme Court, the issue there was whether or not these investors had a class action right under what's called the Securities Uniform Litigation Act. I think I'm saying that right. And the court said no, unfortunately, because the securities were not covered securities within the meaning of the act, because they were not exchanged on the national securities. They were not nationally registered or nationally exchanged. They were internationally issued. However, in opining and finding that they were not covered under the act, they found, nevertheless, they addressed the dissent's, I guess, contention that their decision would affect the power of the SEC going forward in civil enforcement proceedings, and said it doesn't affect the SEC's ability to bring enforcement proceedings against Ponzi schemes such as this, because the SEC's authority is broader than what's in this litigation act, and they have the right, as they did here in this particular case, with these particular securities in this Stanford Ponzi scheme, to seek enforcement actions. If your honors have no further questions, I guess we will request that you affirm the trial court's ruling below. Thank you. Thank you. Thank you. With regard to the alleged determination that all the assets were tainted in the Louise hearing that was held, Mrs. Stanford was not present. She didn't have an opportunity to be heard and present her position. If you read that opinion by the district court, all it says is I'm not going to modify the injunction to allow him to access funds. It also says very clearly that even his lawyers did not have a full and fair opportunity to litigate the issue of whether there were untainted funds, because they didn't have the resources to do it. So even though it's beyond the record, if the court looks at that opinion, it is plain that there has never been a full and fair presentation of the question whether there were untainted funds that were taken by the receiver, and that flies in the face of the jury's determination in the criminal case that there were untainted funds. In the face of simple common sense that people don't exist for 25 years in a case before criminal activity starts and accumulate nothing. So there must be at some point, obviously, a determination of whether or not there were untainted funds that the receiver took possession of. But as to those untainted funds, Mrs. Stanford should be entitled to compensation because they were taken by the United States. It is a per se taking under the Horn case. The Horn case specifically says it uses the eminent domain cases and applies them to personal property. The Chief Justice is very clear on that point. He says there is no textual justification for treating personal property any differently than we would real estate. And he harkens back to the Loretto case. He says that when you physically deprive the owner of the possession and use of personal property, they are entitled to compensation. So that is exactly what was done here by the express terms of the receivership order. The court ordered the receiver and the court took possession of everything these people had, everything. The order does not say I'm taking possession of anything that can be traced back to a fraud or to criminal activity. It's in the broadest possible terms. And the district court was authorized to do that by the Securities and Exchange Act. So the United States Congress in securities cases has authorized the SEC to request and the district courts to grant sweeping misappropriations of And under the construction that's been given to the powers of the court and the receivers under the Securities and Exchange Act, those properties can be sold pre-judgment without ever having a single finding that any one of the people to whom the property is going actually relied upon any misstatements or heard any misstatements. So there's no adjudication. The United States simply has authorized the SEC to come in and on its suspicion that there has been fraudulent activity, take everything and sell it and distribute the proceeds. And the United States has that power. But it doesn't under the Fifth Amendment have the power to do that without compensating the owners. You exceeded your rebuttal time. I'm sorry, Your Honor. Thank you. We thank both sides. The case is submitted.